IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN GIDLEY | : | Case No. 4:14-cv-0800 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| REINHART FOODSERVICE, L.L.C. | : | |
| and REINHART FOODSERVICE | : | |
| INC. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
March 12, 2015

Defendants Reinhart Foodservice, L.L.C. and Reinhart Foodservice Inc. (together, "Reinhart") have filed a Motion to Dismiss Plaintiff Norman Gidley's First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff's First Amended Complaint, filed May 21, 2014, asserts claims for breach of fiduciary duty, equitable estoppel, benefits due under the ERISA plan, and a request to strike the ERISA plan amendment as to Plaintiff. Pl.'s Compl., May 21, 2014, ECF No. 10 (hereinafter "Pl.'s Compl.").

Defendants seek to dismiss all claims against them on several legal grounds. For the following reasons, Defendant's Motion to Dismiss is granted in part and denied in part.  Count I for breach of fiduciary duty is dismissed with prejudice. Count III, the claim for benefits due under the plan, is dismissed without prejudice

1

with leave to amend in accordance with this Court's decision.  Defendants' Motion to Dismiss is denied with regards to Count II equitable estoppel and Count IV request to strike plan amendment as to Plaintiff.

## I. BACKGROUND

This case arises from Plaintiff's employment with Defendants in Sunbury, Pennsylvania. Pl.'s Compl. ¶ 6.  In January 2005, Defendants issued to Plaintiff a statement of benefits, entitled "Employee Benefits Booklet," which contained a written explanation of, *inter alia*, long-term disability coverage for Plaintiff for the year 2005.  *Id.* ¶ 8.  Pursuant to this statement of benefits, in the event Plaintiff became totally disabled as a result of an event occurring in 2005, long-term disability coverage would be provided by the Metropolitan Life Insurance Company (hereinafter "MetLife").  *Id.* ¶ 10.  Of the available coverage options, Plaintiff selected "Plan C – Contributory Insurance." *Id.* ¶ 11.  This plan guaranteed that in the event he became totally disabled, Plaintiff would be entitled to a long-term disability monthly benefit in the amount of sixty (60) percent of the first $6,667 of his pre-disability earnings. *Id.* ¶ 11.  Moreover, his long-term disability benefits would increase each subsequent year based on a seven (7) percent annual index increase in pre-disability earnings (hereinafter the "Index Adjustment"). *Id.* ¶ 12.

On February 18, 2005 Plaintiff was involved in a motor vehicle accident in which he suffered severe injuries and was consequently determined to be totally disabled as of that date. *Id.* ¶ 14.  He began receiving disability payments on August 17, 2005.  *Id.* ¶ 16.  At some point after he began receiving his disability benefits, he learned that Defendants had cancelled the MetLife policy described above on or before January 31, 2005 and replaced it with a new policy provided by Reliance Standard Life Insurance Company (hereinafter "Reliance"). *Id.* ¶ 19. Under the Reliance policy, Plaintiff received the same monthly long-term disability benefit of sixty (60) percent of his pre-disability earnings; however, the Reliance policy did not provide for an Index Adjustment over time. *Id.* ¶ 20.

In his First Amended Complaint, Plaintiff alleges that this plan amendment, that is, the replacement of the MetLife policy with the Reliance policy, was never disclosed to him by Defendants. *Id.* ¶ 21-22.  As previously noted, Plaintiff first asserts a claim against Defendants for breach of a fiduciary duty owed to him because Defendants "knew of should have known of the Plan Amendment and that the representations contained in the 2005 Statement of Benefits regarding the MetLife Policy and the Index Adjustment were inaccurate to the detriment of Plaintiff." *Id.* ¶ 29.  He next asserts a claim for equitable estoppel on the grounds that the statement of benefits contained material misrepresentations on which he detrimentally relied and that Defendants actively concealed the amendment which

3

was a material change to his policy. *Id.* ¶ 32-35.  His third cause of action is a claim for benefits due under the MetLife policy; specifically, he alleges that Defendants never reduced the plan amendment to writing prior to his date of disability and therefore Defendants owe him the money he would have received under the MetLife policy.  Finally, he requests that this Court strike the plan amendment as it pertains to him because of Defendants' active concealment of those previously articulated material facts upon which he detrimentally relied.

## II. STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  However, "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).   In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint. *Kost*, 1 F.3d at 183.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  At the motion to dismiss stage, the court considers whether plaintiff is

entitled to offer evidence to support the allegations in the complaint. *See Maio v. Aetna, Inc*., 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664.

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Hellmann v. Kercher*, No. 07-1373, 2008 WL 1969311 at * 3 (W.D. Pa. May 5, 2008) (Lancaster, J.). Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests.'" *Twombly*, 550 U.S. at 554 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief. *See Hellmann*, 2008 WL 1969311 at *3. Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a

particular legal theory. *See Twombly*, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." *Id.* at 326. If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.* at 327.

## III. DISCUSSION

## A. Statute of Limitations

Rule 12(b) does not explicitly allow for the assertion of a statute of limitations defense in a motion to dismiss. Fed. R. Civ. P. 12(b). Notwithstanding, within the confines of the United States Court of Appeals for the Third Circuit the defense may be raised on a motion to dismiss for failure to state a claim only if the time alleged in the statement of the claim demonstrates on the face of the complaint that the cause of action has not been brought within the applicable statute of limitations period. *See Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168,

1174 (3d Cir. 1978); *see also Hanna v. U.S. Veterans' Admin. Hospital*, 514 F.2d 1092, 1094 (3d Cir. 1975).

Defendants request that this Court dismiss all of Plaintiff's claims against them as untimely.  Specifically, they argue that Plaintiff's First Amended Complaint and the pre-amendment plan on which it relies unequivocally establish that each of Plaintiff's claims accrued no later than August 2006 because that is the date on which Plaintiff should have first seen an increase in his monthly disability benefits by operation of the Index Adjustment.  In so arguing, Defendants contend that this Court should apply a four (4) year statute of limitations to Plaintiff's non-fiduciary claims as analogous to a Pennsylvania breach of contract action and a three (3) year statute of limitations to Plaintiff's breach of fiduciary duty claim by operation of statute.

Plaintiff responds first that it is not clear from the face of his complaint that the claims have been brought outside of the applicable limitations periods. Moreover, he argues, a six (6) year statute of limitations should apply to all of Plaintiffs claims, by operation of statute for his breach of fiduciary duty claim and the rest as governed by Pennsylvania's general six (6) year statute of limitations period.

Without delving into the substance of the parties' arguments regarding the applicable statute of limitations periods for each of Plaintiff's claims, it is enough

to note at this point in time that it is not apparent from the face of Plaintiff's complaint when exactly Plaintiff received a benefit that should have incorporated the Index Adjustment but failed to do so.  Despite Defendants' unsupported assertion that "the '13th Monthly Benefit' would have been paid on or about August 17, 2006," based on their calculations stemming from Plaintiff's concession that he first received a benefit on August 17, 2005, it is not evident from Plaintiff's complaint that he actually received an allegedly miscalculated benefit at that time; dismissal at this juncture would therefore be premature.

## B. Breach of Fiduciary Duty

Defendants next argue that Plaintiff's claim for breach of fiduciary duty must fail regardless of whether it is brought under 29 U.S.C. § 1132(a)(2) or § 1132(a)(3).  Specifically, they argue that under § 1132(a)(2) participants cannot bring a claim for harm sustained only by a participant and not the plan itself.  They further argue that Plaintiff cannot recover under § 1132(a)(3) because he seeks only legal monetary relief when that section authorizes only equitable relief. In his response, Plaintiff disclaims any reliance on § 1132(a)(2), asserting rather that he has brought his claim "pursuant to the broader spectrum of remedies available to an individual who has suffered harm at the hands of a plan fiduciary," but without detailing under what law or theory he brings his claim.  Further complicating the issue, Plaintiff's Amended Complaint does not indicate under which section he

asserts his breach of fiduciary duty claim.  Accordingly, despite the fact that

Plaintiff disclaims any reliance on § 1132(a)(2) in his opposition brief, this Court

will address both statutory remedies as they pertain to Plaintiff's claim.

"When a claim is for breach of fiduciary duty, it must be brought under §

1132(a)(2) or possibly under § 1132(a)(3)."  *Markert v. PNC Financial Services

Group, Inc.*, 828 F.Supp.2d 765, 777 (E.D.Pa. 2011).  Section 1132(a)(2) provides

that a civil action may be brought "by a participant, beneficiary or fiduciary for

appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2).  Section

1109, for its part, clarifies that

> Any person who is a fiduciary with respect to a plan who breaches any of the
> responsibilities, obligations, or duties imposed upon fiduciaries by this
> subchapter shall be personally liable to make good to such plan any losses to
> the plan resulting from each such breach, and to restore to such plan any
> profits of such fiduciary which have been made through use of assets of the
> plan by the fiduciary, and shall be subject to such other equitable or remedial
> relief as the court may deem appropriate, including removal of such
> fiduciary.

29 U.S.C. § 1109.

"[I]t is well settled that recovery under Sections 1109 and 1132(a)(2) inures

to the Plan, not the individual." *Miller v. Mellon Long Term Disability Plan*, 721

F.Supp.2d 415, 426 (W.D.Pa. 2010) (citing *Leckey v. Stefano*, 501 F.3d 212, 226

(3d Cir. 2007); *see also Mraz v. Aetna Life Ins. Co.*, No. 3:12-CV-805, 2012 WL

4965157 at * 3 (M.D.Pa. Oct. 17, 2012) (Conaboy, J.) ("The express language of §

1109 clearly indicates that its purpose is to insure that no fiduciary will take any

action to impair the ability of an ERISA plan to meet its financial obligations. Thus, actions under § 1109 must have the purpose of eliminating some harm to the plan itself."). Consequently, Plaintiff, as a participant, "can only bring a claim pursuant to §§ 1132(a)(2) and 1109 *on behalf of* the Plan, not *against* the Plan." *Id.* at 427; *see also Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1162 n.7 (3d Cir. 1990) ("Because plaintiffs here seek to recover benefits allegedly owed to them in their individual capacities, their action is plainly not authorized by either [§1109 or §1132(a)(2)]").

In this case, Plaintiff asserts this breach of fiduciary duty claim in order to recover the difference between the total of the long-term disability payments that he has and will receive under the Reliance policy, and the total of the long-term disability payments that he would have received under the MetLife policy.  He makes no claim for recovery on behalf of the plan but rather requests only benefits owed to him personally.  Accordingly, based on the foregoing principle and to the extent that his claim is predicated on 29 U.S.C. § 1132(a)(2), Plaintiff's claim must be dismissed with prejudice.

However, this Court must still address Plaintiff's claim to the extent it could be based on § 1132(a)(3).  This section provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or (B) to obtain any

other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter of terms of the plan." 29 U.S.C. § 1132(a)(3).

The term "equitable relief" as it is used in this subsection is limited to those categories of relief which were typically available in equity. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002). More specifically, "equitable relief must mean *something* less than *all* relief, and therefore a reading of the statute that would extend the relief obtainable under § [1132(a)(3)] to whatever relief a court in equity is empowered to provide in the particular case at issue (which could include legal remedies that would otherwise be beyond the scope of the equity court's authority) ha[s] to be rejected." *In re Unisys Corp. Retiree Medical Benefits ERISA Litigation*, 579 F.3d 220, 234 (3d Cir. 2009) (citations omitted). In that vein, a plaintiff can request injunctions, mandamus, and certain types of restitution, but compensatory damages are not permitted. *See id*; *see also Inners v. Keystone Human Services of Lancaster*, Civil Action No. 1:12-CV-1701, 2013 WL 5439117 at * 5 (M.D.Pa. Sept. 27, 2013) (Kane, J.) ("Inasmuch as the complaint seeks judgment in the sum of $58,000 'representing the full benefit amount of the policy' plus attorneys fees and costs, the relief sought is not equitable in nature."). Plaintiff requests only monetary relief, which is clearly not equitable in nature; therefore, to the extent his claim is predicated on §

11

1132(a)(3) it similarly cannot be sustained and must also be dismissed with prejudice.[1]

## C. Equitable Estoppel

Defendants next contend that Count II equitable estoppel must fail as a matter of law because Plaintiff has not satisfied his burden of pleading a material misrepresentation, detrimental reliance, and extraordinary circumstances. Plaintiff responds that he has pled these elements sufficiently to pass muster on a motion to dismiss.

Equitable estoppel is available to support a cause of action under ERISA § 1132(a)(3).  29 U.S.C. §1132(a)(3); *Araujo v. Kraft Foods Global, Inc.*, 387 Fed.Appx. 212, 215 (3d Cir. 2010).  To state a claim for equitable estoppel under ERISA a plaintiff must plead: (1) a material representation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances. *See Burstein v. Ret. Account for Employees of Allegheny Health Educ. and Research Found.*, 334 F.3d 365, 383 (3d Cir. 2003) (quoting *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994)).

---

[1] In support of his argument against dismissal Plaintiff relies on a statement from *In re Unisys Corp.* that "although the statute articulates a number of fiduciary duties, it is not exhaustive.  Rather, Congress relied upon the common law of trusts to define the general scope of trustee' and other fiduciaries' authority and responsibility." 579 F.3d at 227 (citations omitted).  The Court is not sure if Plaintiff intends by this statement to assert a breach of fiduciary duty claim under § 1132(a)(3), or if he is attempting to found his claim on some other nebulous basis of liability. The Court has already addressed the former argument and, to the extent Plaintiff is attempting to argue that there are other bases for his breach of fiduciary duty claim, his reliance on this case is misplaced.  In making that statement, the Third Circuit is clarifying the breadth of duties that fiduciaries are obligated to discharge; it did not create or signal any new bases of liability for breach of fiduciary duty on the part of a plan administrator apart from those available under §§ 1132(a)(2) and (a)(3).

Plaintiff asserts in his complaint that "[t]he 2005 Statement of Benefits, as issued to Plaintiff in January 2005, contained material misrepresentations in that it represented Plaintiff to be covered by the MetLife Policy with Index Adjustment when in fact Defendants Reinhart Companies knew or should have known of the Plan Amendment eliminating the MetLife Policy and Index Adjustment." Pl.'s Compl. ¶ 32.  Importantly, the "duty to inform entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of America, U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 150 (3d Cir. 1999).[2]  Consequently, the fact that the representation may have been literally true at the time it was made does not necessarily foreclose the possibility that it was a representation within the meaning of an equitable estoppel claim.  Whether there exists a duty to inform in an individual case is a highly fact-specific inquiry which would make a decision on this element inappropriate at this early stage in the litigation; it is preferable today to acknowledge that Plaintiff's allegations could establish a representation, as that term has been defined, depending on the facts that ultimately come to light.

---

[2] Significantly, this duty to inform applies to employers who act in a fiduciary capacity. *See Int'l Union*, 188 F.3d at 150; *see also Smith v. Hartford Ins. Group*, 6 F.3d 131, 141 n.13 (3d Cir. 1993) ("[A]n employer can be liable under ERISA in his fiduciary capacity both on breach of fiduciary duty and equitable estoppel theories.").  However, Plaintiff has alleged elsewhere in his complaint, "At all times relevant hereto, Defendants Reinhart Companies were together the Plan Administrator of the plan and owed a fiduciary duty to Plaintiff." Pl.'s Compl. ¶ 26.

Thus, the Court must now consider the materiality of that purported representation. "[A]ny provision of a plan subject to ERISA that establishes a benefit is a material term of the plan." *Curcio*, 33 F.3d at 237; *see also Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993) ("[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision. . . ."). Here, the representation alleged is the provision of the plan prior to the plan amendment that notified Plaintiff that his disability benefits would increase each year based on the Index Adjustment. As it is alleged in Plaintiff's complaint, this provision establishes a benefit which, under prevailing case law, is sufficient to satisfy the materiality inquiry of the first element of an equitable estoppel claim.

Next Plaintiff must demonstrate reasonable and detrimental reliance upon that representation. "This factor, which is generally referred to as reliance, has within it two subfactors: reasonableness and injury." *Curcio*, 33 F.3d at 237. Plaintiff must prove both subfactors to establish detrimental reliance. *See id.* In his complaint, Plaintiff asserts that "Plaintiff, to his detriment, reasonably relied upon the representations contained in the 2005 Statement of Benefits and continued in his belief that he was covered by the MetLife Policy with the Index Adjustment." Pl.'s Compl. ¶ 33. Viewing the complaint as a whole, it is clear that Plaintiff is arguing that he was injured in that he received less compensation than he

anticipated.  He also summarily alleges that such reliance was reasonable, which allegation is sufficient in the context of the other facts alleged.  Without the benefit of a full factual record, this Court is unable to conclude that Plaintiff was unreasonable in his reliance or that he was not injured in the way that he intimates. He has therefore adequately pled, at this stage, the second element of an equitable estoppel claim.

As for the third element, neither ERISA law nor Third Circuit precedent explicitly define what is meant by "extraordinary circumstances"; however, cases discussing the issue have developed, to some extent, the phrase's parameters. *See Curcio*, 33 F.3d at 237; *see also Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996) (detailing the scenarios in which the Third Circuit has found extraordinary circumstances).  As a general description of the state of the law, extraordinary circumstances arise from conduct involving "acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." *Register v. PNC Financial Services Group, Inc.*, 477 F.3d 56, 74 (3d Cir. 2007) (citing *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1011 (3d Cir. 1997)).  What that broad statement means varies based on the specific conduct at issue.

In some cases, the Third Circuit has found extraordinary circumstances to be present when there is a showing of affirmative acts of fraud or similarly inequitable

conduct by an employer. *See Rosen v. Hotel & Restaurant Employees & Bartenders Union*, 637 F.2d 592, 598 (3d Cir. 1981) (holding that a pension fund could not deny benefits on the grounds that the participant's employer failed to pay required contributions where fund administrator allowed employee to pay contributions himself).  In other cases, it is the "network of misrepresentations that arises over an extended course of dealing between the parties" that creates extraordinary circumstances. *See Kurz*, 96 F.3d at 1553 (citing *Curcio*, 33 F.3d at 238 (finding extraordinary circumstances where an insurer misrepresented the type of coverage available, informed patient that certain coverage would be provided and then disclaimed coverage).  In other situations, extraordinary circumstances revolve around the vulnerability of particular plaintiffs. *See Curcio*, 33 F.3d at 238 (hospital patient denied coverage for substantial claim after hospital represented that coverage would exist).

Clearly, as with all the other elements of an ERISA equitable estoppel claim, the finding of extraordinary circumstances is necessarily a case-by-case determination that hinges on the specific facts and circumstances of any given scenario.  Plaintiff has alleged that "Defendants' issuance of the 2005 Statement of Benefits in January 2005, when Defendant knew or should have known of the Plan Amendment, constituted active concealment of a material change to Plaintiff's long-term disability benefits and to the Plan.  In issuing the 2005 Statement of

Benefits, containing representations that Plaintiff was covered by the MetLife

Policy and the Index Adjustment, despite intending to implement or already having

implemented the Plan Amendment, Defendants misled Plaintiff and acted in bad

faith towards Plaintiff." Pl.'s Compl. ¶ 34-35.  Whether these given facts can

support a finding of extraordinary circumstances is impossible to determine at this

stage; however, it is plausible that such could be the case, and the Court is

unwilling to rule out the possibility that Plaintiff may present or uncover more

detailed facts at a later stage in the proceeding which could lead to a determination

of the existence of extraordinary circumstances.  Consequently, Plaintiff has

adequately pled a claim for equitable estoppel.

**D. Request to Strike Plan Amendment**

Defendants extend their argument on Plaintiff's equitable estoppel claim to

Count IV request to strike plan amendment as to Plaintiff.  The Third Circuit has

held that "under ordinary circumstances defects in fulfilling the reporting and

disclosure requirements of ERISA do not give rise to a substantive remedy other

than that provided for in section 502(a)(1)(A) of that Act." *Ackerman v. Warnaco,*

*Inc.*, 55 F.3d 117, 124 (3d Cir. 1995) (citing *Hozier*, 908 F.2d at 1169-70).

However, in certain limited circumstances the Third Circuit has recognized the

possibility of such substantive remedies when a plaintiff can demonstrate the

presence of "extraordinary circumstances." *See Gridley v. Cleveland Pneumatic*

*Co.*, 924 F.2d 1310, 1319 (3d Cir. 1991).  This extraordinary circumstances requirement is identical to that required to state a claim for equitable estoppel under ERISA law.  *See Ackerman*, 55 F.3d at 125 ("Such circumstances include situations where the employer has acted in bad faith, or has actively concealed a change in the benefit plan, and the covered employees have been substantively harmed by virtue of the employer's actions."); *see also Register*, 477 F.3d at 74 ("While we have not provided a rigid definition of 'extraordinary circumstances,' such circumstances generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud.") (citations omitted).

This Court has already determined that Plaintiff has adequately pled at this stage the existence of extraordinary circumstances.  For the same reasons discussed above, the Court similarly declines to dismiss Count IV, pending a more developed factual record.

## E. Exhaustion of Administrative Remedies

Finally, Defendants argue that all of Plaintiff's claims must be dismissed for failure to exhaust his administrative remedies.[3]  Plaintiff counters that the exhaustion doctrine does not require dismissal of any of his claims because pursuit of administrative remedies would have been futile in his specific circumstances.

---

[3] Though Defendants make this argument on all four of Plaintiff's claims, because this Court has already determined to dismiss Count I with prejudice, it will address this argument only as it relates to Counts II, III, and IV.

ERISA and its regulations require plans to provide certain procedures for reviewing claims after participants submit proof of loss but prior to the initiation of judicial action. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1 (2012). Except in a very few limited circumstances, federal courts will not entertain ERISA claims for benefits under § 502 (a)(1)(B) unless the plaintiff has exhausted his or her administrative remedies under the plan. *See American Chiropractic Ass'n v. American Specialty Health Inc.*, 14 F.Supp.3d 619, 626 (E.D.Pa. 2014). This means that "[p]laintiffs who fail to make known their desire for benefits to a responsible company official are precluded from seeking judicial relief." *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002). The purpose of this requirement is "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980).

Be that as it may, a plaintiff is excused from exhausting his administrative remedies under ERISA if he can make a "clear and positive showing" that it would be futile for him to do so. *See Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244, 249-50 (3d Cir. 2002). In determining whether futility exists, the Third Circuit has identified the following factors that a court should consider: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff

acted reasonably in seeking immediate judicial review under the circumstances; (3) the existence of a fixed policy denying benefits; (4) the failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile. *See id.* at 250.

Moreover, "ignorance of exhaustion requirements is not among the exceptions available to Plaintiff." *Piscopo v. Public Service Elec. and Gas Co.*, Civil Action No. 13-552 (ES), 2013 WL 5467112, at * 8 (D.N.J. Sept. 27, 2013); *see also Delong v. Teacher's Ins. and Annuity Ass'n*, No. CIV.A. 99-1384, 2000 WL 426193, at *5 (E.D.Pa. Mar. 29, 2000) ("[P]laintiff's assertion of ignorance regarding the claim process and the Certificate of Insurance do not rise to the level of futility . . . It would be illogical for plaintiff to be allowed to establish futility based on ignorance of a claim process which he was never close to invoking."); *Zahl v. Local 641 Teamsters Welfare Fund*, Civil Action No. 09-1100, 2010 WL 1931235, at *3 (D.N.J. May 13, 2010) ("[N]either confusion nor ignorance regarding a plan's requirements excuses a failure to exhaust administrative remedies").

In his complaint, Plaintiff does not allege that he diligently pursued administrative relief, that immediate judicial review was necessary, that Defendants exhibited a fixed policy denying benefits, or that they failed to comply

with their own internal procedures.  Rather, Plaintiff bases his assertion of futility on four circumstances.  First, he argues that his harm stems from the complete removal of the MetLife policy, so that there was no denial of benefits from which to appeal.  Next, he claims that Defendants' act of cancelling the policy prior to the date of Plaintiff's accident removed from the Plan the very administrative avenue that Defendants suggest Plaintiff should have taken.  Further, he contends that he had no knowledge of the procedures contained within the Reliance policy.  Finally, he argues that even if he had been alerted to the procedures of the Reliance policy, that process would have been useless because the Reliance Policy did not offer any Index Adjustment.

However, with all of these arguments Plaintiff ignores the vital detail that he never attempted to make use of the administrative procedures contained within either of the policies.  Whatever the status of the internal procedures under each policy, Plaintiff had an obligation to "make known [his] desire for benefits to a responsible company official," and he made no attempt to do so.  He cannot now come to court and argue that it would have been futile to follow either procedure because he did not know which one to follow – the one which no longer existed or the one he was unaware of – because he took no steps to find out the answer to that question.  *See, e.g., Harrow*, 279 at 251-52 (finding that a plaintiff who took no steps beyond an initial telephonic inquiry did not qualify for the futility exception);

*Berger v. Edgewater Steel Co.*, 911 F.2d 911, 917 (3d Cir. 1990) (finding simultaneously that a blanket denial of applications for a retirement plan established futility for some plaintiffs but denying application of the futility exception for a fourth plaintiff who had never asked for the specific type of retirement plan). Moreover, Plaintiff's ignorance of the necessary procedures is not sufficient to establish futility; if he wanted to pursue a request for benefits due to him under his plan, it was his responsibility to acquaint himself with the internal administrative remedies under the policy. Accordingly, Count III claim for benefits due under the plan is dismissed without prejudice with leave to amend to certify exhaustion of his administrative remedies.

As for Plaintiff's equitable claims, although the Third Circuit provides that plaintiffs genuinely seeking equitable relief under § 1132(a)(3) need not exhaust their administrative remedies before seeking relief in federal court, *see Zipf v. Am. Tel. & Tel. Co.*, 799 F.2d 889, 891 (3d Cir. 1986), this exception does not apply when the facts alleged do not present an equitable claim that is independent of a claim for benefits. *See Harrow*, 279 F.3d at 253-54; *see also Agnew v. Belron U.S. Inc.*, No. 4:08-CV-02153, 2011 WL 1539875, at * 9 (M.D.Pa. Mar. 18, 2011) (Prince, M.J.). "Plaintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims." *Id.* at 253 (citing *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988) (holding that

the exhaustion doctrine would be "rendered meaningless" if plaintiffs were allowed to bypass exhaustion by artfully dressing contract claims in statutory clothing)); *see also Diaz v. United Agr. Employee Welfare Ben. Plan and Trust*, 50 F.3d 1478, 1484 (9th Cir. 1995) ("[M]any employee claims for plan benefits may implicate statutory requirements imposed by ERISA . . . [b]ut that prospect does not give a claimant the license to attach a 'statutory violation' sticker to his or her claim and then to use that label as an asserted justification for a total failure to pursue the congressionally mandated internal appeal procedures."). "A supposedly equitable claim is actually a benefit claim if the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA." *Agnew*, 2011 WL 1539875, at * 9.

Here, Plaintiff alleges in Counts II and IV that Defendants made material misrepresentations and actively concealed their knowledge of the forthcoming plan amendment.  These allegations, if proven truthful, could constitute claims independent of the claim for benefits because they could support an affirmative and intentional wrongdoing on Defendants' part that is not necessary to state in a claim for benefits.  *See, e.g., Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999) (finding an equitable claim independent of the claim for benefits where "Smith [did] not challenge a denial of benefits or an action related to a denial of benefits, but rather the *conduct* of Sydnor and McGraw. . . ").

Though Plaintiff ultimately requests the same relief under all his claims, the question is whether the equitable claim itself is independent of the claim for benefits, not whether the relief sought under the equitable claim is independent of that sought under the claim for benefits.  Defendants' purported acts of wrongdoing rest squarely upon an interpretation and application of ERISA, rather than upon an interpretation and application of the plan itself.  Accordingly, based on the facts alleged in support of these equitable claims, the Court will decline at this juncture to dismiss Counts II and IV for failure to exhaust administrative remedies.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part.  Count I for breach of fiduciary duty is dismissed with prejudice.  Count III claim for benefits due under the plan is dismissed without prejudice with leave to amend in accordance with this Court's decision. Defendants' Motion to Dismiss is denied with regards to Count II equitable estoppel and Count IV request to strike plan amendment as to Plaintiff.


BY THE COURT


s/ Matthew W. Brann
Matthew W. Brann

24

United States District Judge